IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 04-cv-00372-OES-PAC

SUZANNE K. RANKIN,

Plaintiff(s),

vs.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,

Defendant(s).

ORDER DETERMINING STATUS
OF PLAINTIFF TO BE THAT OF INVITEE
AND
ORDER DENYING AS MOOT PLAINTIFF'S
MOTION TO STRIKE THE RAILROAD'S AFFIDAVITS

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated: September 15, 2005

## BACKGROUND

Plaintiff has brought this action against the defendant railroad for injuries that she suffered on March 21, 2002, from a fall into a trench that the railroad had dug where Clay Street in Sedalia, Colorado, crosses the railroad tracks. The railroad has filed a motion in which it asks that I determine as a matter of law the status of plaintiff either as an invitee or a trespasser as of the date and time that the accident occurred.

On March 7, 2005, I entered an Order in which I denied defendant's previously-filed Motion for Summary Judgment. I ruled that the circumstances of this case were governed by the provisions of Colorado's Premises Liability Act, and I permitted plaintiff to amend her Complaint to state a cause of action pursuant to that statute.

Colo.Rev.Stat. § 13-21-115.

I also ruled at that time that issues of fact prevented me from determining plaintiff's status. However, I am now persuaded that under Colorado law I am required to make that determination as a matter of law. The statute states:

> (4) In any action to which this section applies, the judge shall determine whether the plaintiff is a trespasser, a licensee, or an invitee, in accordance with the definitions set forth in subsection (5) of this section.

Colo.Rev.Stat, § 13-21-115(4). Additionally, the Colorado Supreme Court has stated that "[w]hether an injured plaintiff is a trespasser, licensee, or invitee must be decided by the court, but the ultimate issues of liability and damages are questions of fact for a jury, or if none, for the trial judge." Vigil v. Franklin, 103 P.3d 322, 326 (Colo. 2004).

## FACTS

In my previous order, I summarized the facts that underlie the controversy with regard to plaintiff's status. I noted that the facts presented by both parties provide the following scenario of events. Plaintiff left her house a little after midnight on March 21, 2001, to walk her dog. She was walking West on Clay Street, and approached the point where Clay Street passes over two sets of railroad tracks. To continue her walk on Clay Street, plaintiff would necessarily cross over the railroad tracks. The intersection of Clay Street and the railroad tracks is considered by the parties as the Clay Street crossing, or just the crossing.

As plaintiff approached the crossing, she observed a barricade that was

located at the northeast corner of the crossing. The barricade was approximately three to four feet tall and about four feet wide and said "ROAD CLOSED." Plaintiff continued her route, which was a westerly path that would carry her over the tracks. After walking over the first set of tracks, plaintiff fell into a trench that was located between the two sets of railroad tracks. Plaintiff suffered injuries as a result of the fall.

After vigorous questioning by counsel for the railroad, plaintiff admitted that on the night of her accident she did not have any express permission from the railroad to cross the tracks. However, plaintiff testified that she concluded that the barrier meant that the crossing was closed to vehicular traffic, but not pedestrian traffic. She testified that because she, as a pedestrian, was able to pass by the barrier, she "just assumed automatically that [the barrier] meant auto traffic only." Deft's Brief at 5-6, quoting plaintiff's deposition testimony. In response to other questioning, plaintiff testified that the sign did not effectively block the crossing, and it "was very obvious that there were no obstructions anywhere for pedestrians." Pltf's Resp. at 3, quoting plaintiff's deposition testimony.

## DISCUSSION

### 1

The CPLA provides that a landowner shall be liable to a party only in accordance with the duties that the landowner owes as determined by the status of the particular party. Colo.Rev.Stat. § 13-21-115(2). The statute sets out three classifications of parties, only two or which are relevant here, trespassers and

invitees. The duties of a landowner to a party vary in accordance with the particular status of the party.

The railroad argues that plaintiff was a trespasser. The statute provides that a trespasser is "a person who enters or remains on the land of another without the landowner's consent." Section 13-21-115(5)(c). The railroad asserts that plaintiff did not have permission to be on the land of the railroad, therefore, she was a trespasser.

The duties of a landowner to a trespasser are contained in another section of the statute:

> A trespasser may recover only for damages willfully or deliberately caused by the landowner.

Section 13-21-115(3)(a). If plaintiff's status on the night of her accident was that of a trespasser, she may recover damages only if she can demonstrate that the actions of the railroad were "willful or deliberate."

Plaintiff argues that she was not a trespasser, but was an invitee. An invitee is defined in the statute as "a person . . . who enters or remains on such land in response to the landowner's express or implied representation that the public is requested, expected, or intended to enter or remain." Section 13-21-115(5)(a). Under the statute, "an invitee may recover for damages caused by the landowner's unreasonable failure to exercise reasonable care to protect against dangers of which he actually knew or should have known." Section 13-21-115(3)(c)(I).

**2**

In my previous order I concluded as a matter of law that plaintiff, along with all other members of the public, was an invitee with respect to the Clay Street crossing. In that order, I limited my finding to the period that immediately preceded the date of March 20, 2002, the date upon which the railroad dug the trench, and out the barriers with the notification that stated "Road Closed." I found that prior to March 20, and up to that date, the undisputed evidence reflects that the railroad had extended its "express or implied representation that the public is requested, expected, or intended to enter" the crossing for purposes of passing over the tracks from one part of the community of Sedalia to another. Section 13-21-115(3(c)(1). Plaintiff suffered her accident shortly after midnight on the morning of March 21, 2002.

As I noted above, I cannot limit my finding or conclusion with regard to plaintiff's status to the period preceding the accident, and I cannot leave for the jury the determination of plaintiff's status as of the moment of her accident. I am required by the statute to make that determination as a matter of law. Section 32-21-115(4).

The railroad argues that "[t]he status of the Plaintiff as an invitee should be determined by the relationship between the Plaintiff and the Union Pacific at the time of the accident." Defts' Mtn at 11. In its view, it had placed various signs and barricades, including a sign that read "ROAD CLOSED," and plaintiff herself had admitted that she saw these signs and barricades when she approached the crossing. Id. at 7. The railroad argues that plaintiff knew that the road was closed,

and for that reason she is unable to meet her burden to prove by a preponderance of the evidence that she entered or remained on the crossing in response to the Union Pacific's express representation that the public was requested, expected or intended to enter or remain on the crossing. Id. at 12.  The railroad claims that "[e]ach one of the barricades and signs described [in its motion], standing alone, constituted an express or implied representation by the Union Pacific to the public, including Ms. Rankin, that the Union Pacific did not request, expect, or intend that the public enter or remain on the crossing. Id. at 14.

Plaintiff, for obvious reasons, agrees with the analysis presented by me in my previous order, in which I found plaintiff to be an invitee, at least up to the time of her accident.  In my order, I held out the possibility that the jury would be charged with the responsibility to determine the issues of fact that existed in regard to whether the railroad had adequately revoked its previously-existing invitation to pedestrians, as well as motor vehicles, to pass over the crossing.  However, I have acknowledged in this present order that plaintiff's status is not an issue for the jury.  In her presen Response, plaintiff persists in the argument that the railroad has failed to meet its burden "to prove that they effectively revoked the public's permission to use the crossing, and that Ms. Rankin was a trespasser." Pltf's Resp. at 13.

**3**

In support of their respective positions, both plaintiff and the railroad point to discovery materials or affidavits that demonstrate the perceptions or intentions of their

respective sides with regard to the conditions at the crossing on the evening of the accident. I am not persuaded that the perceptions or intentions of either set of the opposing witnesses can determine the issue of the status of plaintiff on the evening of the accident.

The railroad does not contend that plaintiff was any status other than an invitee up to the moment that it placed its signs and barricades, and it could hardly maintain such a position here, in view of the fact that this crossing consists of a public street that passes over the railroad's tracks. Instead, the railroad appears to argue that it can alter the status of any invitee into that of a trespasser merely through the placement of signs or barricades at the crossing. I disagree.

The underlying purpose of the premises liability act is to determine the standard of care that will apply to the conduct of the landowner in the particular circumstances presented. "The status of an injured party and the appropriate standard of care are determined by the relationship between the injured party and the landowner." Henderson v. Master Klean Janitorial, Inc., 70 P.3d 612, 615 (Colo.App. 2003), *citing* § 13-21-115(4).

An injured party's status is not determined solely by reference to the intentions or expectations of the landowner. As the Colorado Court of Appeals noted in the Henderson case, a public invitee is a person who is invited to enter the property for the purpose for which the land is held open to the public. Id. at 616, *citing* Restatement (Second) of Torts § 332(2) & cmt. b (1965). The property at issue here

is a public street across railroad tracks, and the invitation from the landowner to all members of the public to cross the tracks at the Clay Street crossing is implicit and evident in the geography and historical use of the location. So long as the Clay Street crossing continues to consist of a public street across the railroad tracks, all members of the public will continue to have the status of invitees with regard to the crossing.

Because the public are invitees with regard to the crossing, and have always been invitees, the railroad has always had the duty as the landowner "to exercise reasonable care to protect against dangers of which [it] actually knew or should have known." Section 13-21-115(3)(c)(I). That is the duty that is imposed upon a landowner with regard to invitees.

The railroad does not contend that it placed signs and barricades at the crossing as part of an effort to permanently close it, and that it intended then and into the foreseeable future to bar any movement of any type across it. Rather, the undisputed evidence reflects that the railroad erected signs and barricades as part of an effort to place people on notice that the conditions of the crossing were altered at that time for temporary purposes.

The placement by the railroad of temporary warning signs or barricades does not alter the relationship between the railroad and the public, and does not change the status of the public from that of invitee to that of trespasser. If a landowner could change an invitee's status so easily, any landowner could relieve itself of its burden to

8

exercise reasonable care with regard to invitees merely by placing signs or barricades, such as "Wet Floor, Do Not Cross."

According to the argument of the railroad, as soon as a restrictive sign or barrier is erected, an injured party may recover from the landowner only for "damages willfully or deliberately caused by the landowner." Section 13-21-115(3)(a). I disagree. In the circumstances presented here, the railroad cannot reduce its standard of care with regard to invitees merely by placing temporary signs and barricades. When the railroad alters conditions at the crossing, such as by engaging in construction activities, it continues to owe a duty to the public as invitees, and its duty is fulfilled only through the exercise of reasonable care to protect the public from dangers about which the railroad is aware. The purpose of any restrictive signs or barricades is to fulfill that duty, not to lower the standard of care. If the railroad was correct in its argument, it could post a Road Closed sign of any size, and having thereby converted invitees into trespassers, rest content in the knowledge that it would thereafter be liable only for damages that are caused through their deliberate and willful actions. Landowners cannot so easily avoid the standard of care that is appropriate to persons who are invitees.

**4**

The railroad presented an additional argument in its Response to plaintiff's Motion to Strike the railroad's common law defenses. Although the railroad's additional argument with regard to plaintiff's status improperly was presented in a

9

Response to an unrelated motion, I will address it nevertheless.

The railroad argues that if I find and determine that plaintiff was an invitee during the events at issue, then I should find and determine as well that the railroad's duty of care to plaintiff should be determined by reference to the Colorado Recreational Use Statute, Colo.Rev.Stat. § 33-41-101 *et seq.*, and not by reference to the premises liability statute. The Recreational Use Statute provides as follows:

> . . . an owner of land who either directly or indirectly invites or permits, without charge, any person to use such property for recreational purposes does not thereby:
>
> (a) Extend any assurance that the premises are safe for any purpose;
>
> (b) Confer upon such person the legal status of an invitee or licensee to whom a duty of care is owed;
>
> (c) Assume responsibility or incur liability for any injury to person or property or for the death of any person caused by an act or omission of such person.

§ 33-41-101(1).

The railroad points out that plaintiff testified that at the time of her accident she was taking a walk with her dog. The railroad argues, for that reason, that plaintiff had a "recreational purpose" at the time of her accident. Therefore, in its view, the Recreational Use Statute applies to the circumstances of this case, and plaintiff may not avail herself of the status of an invitee.

I need not linger long on this argument. The Recreational Use Statute applies to circumstances in which landowners *invite* parties, either directly or indirectly, to

engage in recreational purposes upon their land. Id. No evidence exists that the railroad has invited people, for example, to picnic or play baseball on the Clay Street crossing. No evidence exists that the railroad either has invited or encouraged people to engage in recreational activities at this crossing. In fact, if asked, officials of the railroad would no doubt state that recreational activities at the crossing are discouraged – for safety reasons. That people may happen to walk a dog at the crossing, or skip across, or jog across, or play a musical instrument while crossing, are activities that are merely incidental to the primary purpose of the crossing, which is to provide a means for people to get from one side of the tracks to the other. People do not lose their status as invitees if they happen to be engaging in such activities at the time that they are injured while on the railroad's land.

The railroad seeks to rely upon Judge Kane's decision in Kirkland v. United States, 930 F.Supp. 1443 (D.Colo. 1996). The facts there are completely distinguishable. Kirkland, the plaintiff, injured his finger when he slammed it in an outhouse door at a National Forest Service campground. Contrary to the facts that are presented here, the landowner in Kirkland, the United States, clearly and directly invited people to use the property for recreational purposes. As Judge Kane pointed out, the "purpose of this provision [of the Recreational Use Statute] is to encourage rural landowners to make property available for recreational use by limiting their potential tort liability for doing so." Id. at 1447. The railroad has pointed to no evidence that suggests that it has invited or encouraged people, either directly or

indirectly, to use the Clay Street crossing for recreational purposes.

## CONCLUSION

It is therefore ORDERED as follows:

1. Defendant's Motion and Brief for Determination of Plaintiff's Status Under the Colorado Premises Liability Act [filed May 10, 2005] is GRANTED.

2. I find and determine as a matter of law that the status of plaintiff throughout the events that underlie this case was that of invitee as defined at Colo.Rev.Stat. § 13-21-115(5)(a).

3. Plaintiff's Motion to Strike [Doc. 75-1, filed July 19, 2005] is DENIED AS MOOT.

Dated at Denver this day of September 15, 2005

BY THE COURT:

s/ O. Edward Schlatter

_____
O. Edward Schlatter
U.S. Magistrate Judge