IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.  04-cv-00372-OES-PAC

SUZANNE K. RANKIN,

Plaintiff(s),

vs.

UNION PACIFIC RAILROAD COMPANY, a Delaware corporation,

Defendant(s).

---

ORDER DENYING THE RAILROAD'S
MOTIONS IN LIMINE IN REGARD TO
(1) PLAINTIFF'S EXPERT, DONALD BOWDEN,
(2) EVIDENCE REGARDING ROADWAY BARRICADES
AND
(3) PLAINTIFF'S MEDICAL EXPERT, STERLING WEST, M.D.

---

ORDER ENTERED BY MAGISTRATE JUDGE O. EDWARD SCHLATTER
Dated:  September 29, 2005

This is an action that is being asserted by plaintiff pursuant to Colorado's

Premises Liability Act ("CPLA").  Colo.Rev.Stat. § 13-21-115.  Plaintiff claims that she

suffered injuries when she fell into a trench that had been dug by the railroad where

Clay Street in Sedalia, Colorado, crosses the railroad tracks.

The Railroad has filed two motions in limine in regard to the physical

circumstances that existed at the time that plaintiff's accident occurred.  In one motion,

it argues that plaintiff's expert, Donald Bowden, should be stricken as a witness, or his

testimony should be limited.  In the other motion, the railroad argues that Mr. Bowden

should not be permitted to testify that the roadway barricades that had been erected at

the site of the accident "violated any provision of State or local law and that the trench

was an unsafe condition."  Deft's Mtn re Barricades at 1.

I will deny both motions.

**ALLEGED CONTRIBUTORY NEGLIGENCE**

**OF INDEPENDENT CONTRACTOR**

One preliminary issue runs throughout the railroad's briefs.  I will dispense with

this issue at the outset.

The railroad argues in several places that it cannot be held liable for one portion

of the signs or barricades that were placed at the crossing because its employees

"were not physically involved in placing barricades on the roadways near the Clay

Street crossing.  Union Pacific hired an independent contractor."  Deft's Mtn re Bowden

at 2.  The railroad argues that "[a]s a general rule, one who hires an independent

contractor is not liable for the independent contractor's negligence."  Id. at 8.

As counsel for plaintiff points out in his brief, the railroad cannot delegate its

responsibilities under the Colorado Premises Liability Act, § 13-21-115,  to an

independent contractor.  The Colorado Supreme Court addressed this issue, and held:

> We therefore conclude that [in passing § 13-21-115]
> the General Assembly intended to retain the doctrine of
> nondelegation of premises liability.  A landowner may not
> delegate to an independent contractor the obligation to
> exercise reasonable care to protect invitees and licensees
> against dangers within the scope of the statute.

Springer v. City and County of Denver, 13 P.3d 794, 804 (Colo. 2000); *citing* Sofford v.

Schindler Elevator Corp., 954 F.Supp. 1459, 1461 (D.Colo. 1997); *and see also* Jules

2

v. Embassy Properties, Inc., 905 P.2d 13, 15 (Colo.App. 1995) ("So long as a
landowner retains such possession, therefore, it cannot delegate the statutory duties
imposed upon it by § 13-21-115(1) (1987 Repl. Vol. 6A.)."

On this issue, the railroad is simply incorrect.  I conclude that it cannot delegate
to an independent contractor its duty to exercise reasonable care.

## 1.  DAUBERT CHALLENGES TO BOWDEN

Defendant argues that plaintiff's expert, Donald Bowden, is not qualified to act
as an expert in the area for which he is offered.  Even if he is found to be qualified,
defendant asserts, the testimony that Bowden will provide is not relevant or reliable.

Plaintiff states that "Mr. Bowden is endorsed to testify with respect to the
policies, practices and procedures[,] including safety rules of the railroad industry[,] for
protecting dangerous conditions on railroad property such as open trenches."  Pltf's
Resp. to Mtn re Bowden at 2.  Plaintiff states that "Mr. Bowden is a former railroad road
master with more than 25 years of experience," and indicates that "[a] road master is a
person employed by the railroad to maintain its track and right-of-way."  Id.  A road
master's duties include "ensuring that the railroad's premises are safe for both railroad
employees and the public."  Id.; *see also* Bowden curriculum vita, id., Ex. 1.

## 1.  Qualifications.

The railroad's only argument with regard to Bowden's qualifications is that this
case does not involve the alleged area of Bowden's expertise, namely, "the policies,
procedures, practices or language of the railroad industry."  Deft's Mtn re Bowden at 7.
The railroad argues that this case "turns on whether there was a dangerous condition

on Union Pacific's property, which Union Pacific denies." Id.

The railroad has not met its burden to demonstrate that Bowden lacks the qualifications to testify in the areas for which he has been endorsed to testify. The railroad has also failed to demonstrate that Bowden's area of expertise, policies and procedures, does not relate to what the railroad asserts is the core issue in this case, the presence of a dangerous condition at the Clay Street crossing.

In short, I am not persuaded by the railroad's challenge to Bowden's qualifications to testify in the area for which he has been offered.

## 2. Reliability.

### A.

Defendant has challenged the reliability of plaintiff's expert pursuant to the principles that were announced by the United States Supreme Court in the Daubert and Kumho cases. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 119 S.Ct. 1167 (1999). In Daubert, the United States Supreme Court held that trial courts must engage in a "gatekeeping" role with regard to the introduction of expert testimony. Daubert, 509 U.S. at 592-97. In considering scientific or expert testimony, the courts are concerned, in part, with the application of Rules 104 and 702 of the Federal Rules of Evidence.

> Faced with a proffer of expert scientific testimony, then, the trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid

4

> and of whether that reasoning or methodology properly can
> be applied to the facts in issue.

Id. at 592.  Once the court is aware that scientific evidence is at issue, judges are

obligated to ensure that "any and all scientific testimony or evidence admitted is not

only relevant, but reliable."  Id. at 589.  The Court stated, "Rule 702 . . . clearly

contemplates some degree of regulation of the subjects and theories about which an

expert may testify."  Id.

To carry out their role as gatekeeper, trial courts must weigh and evaluate the

admissibility of expert testimony according to several factors, including the following:

(1) whether the theory or technique at issue has been subjected to testing, (2) whether

the theory or technique has been subjected to publication and peer review, (3) whether

the theory or technique has a known or potential rate of error, and (4) whether the

theory or technique has achieved general acceptance in the particular technical or

scientific community.  Id. at 593-94.  The Supreme Court has emphasized that "the test

of reliability is 'flexible,'" and that Daubert's list of specific factors "neither necessarily

nor exclusively applies to all experts or in every case."  Kumho, 526 U.S. at 141, 119

S.Ct. at 1171.

> Rather, the law grants a district court the same broad
> latitude when it decides how to determine reliability as it
> enjoys in respect to its ultimate reliability determination.

In the Kumho case, the Supreme Court was asked to decide whether the

gatekeeping role of a trial judge is limited to an evaluation of "scientific testimony" only,

or whether the same role should be performed with regard to all expert testimony.  The

5

Supreme Court held that the language of Rule 702 "makes no relevant distinction between 'scientific' knowledge and 'technical' or 'other specialized' knowledge." Id. at 1174.  Thus, Daubert's general principles apply to all expert matters which fall within the ambit of Rule 702.  Id. at 1175.  Regardless of the scientific or technical field from which an expert springs, the objective of the gatekeeping requirement is "to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Id. at 1176.  The focus of the court's inquiry must be "solely on principles and methodology, not on the conclusions that they generate."  Daubert, 509 U.S. at 594.

**B.**

Defendants argue that I should strike Bowden as a witness because he "made no independent investigation into the facts and circumstances of the Plaintiff's alleged injury."  Defts' Mtn re Bowden at 5.  Rather, in defendants' view, Bowden "simply relied on the documents he was given by Plaintiff's attorney."  Id.  In defendants' view, "[a]nother expert cannot duplicate Bowden's conclusion, because they are based entirely on his own thought process and not on any independent investigation."  Id.

Plaintiff argues that Bowden's testimony passes the Daubert-Kumho test because "[t]here are certain areas of expertise that are special areas of knowledge and experience that are outside of the average jurors' experience."  Pltf's Resp. Re Bowden Mtn. at 3.  Plaintiff asserts that "[i]t is doubtful that most jurors would be familiar with what a railroad does to protect the public from harm with respect to dangerous

6

conditions on the railroad's property.  Yet no scientific analysis is necessary to formulate opinions in this area."  Id.

I agree with plaintiff.  First, nothing in Daubert-Kumho requires an expert to "visit the scene," so to speak, in order to offer or support an opinion on a contested technical issue.  Experts traditionally are allowed to testify from the reports, diagrams, depositions or other evidence that has been gathered in a case.  Medical experts, for example, are permitted to offer opinions about a patient's condition that is based upon their review of a patient's medical records and/or laboratory tests, and not upon a physical exam of the patient, and, indeed, forensic pathologists are permitted to offer opinions about cause of death without having attended the autopsy.

Second, the Daubert-Kumho cases do not require that the testimony of every expert satisfy every criteria that was listed in the Daubert decision.  The Kumho case pointed out that the purpose of the gatekeeping inquiry is "to make certain that an expert, whether basing testimony upon professional studies *or personal experience*, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  Kumho at 1176, emphasis added.  As plaintiff has pointed out in her brief, an evaluation of the practices and procedures utilized by the railroad in placing signs and barricades does not lend itself to the type of "scientific inquiry" that is described in Daubert.  Nevertheless, such testimony may be the subject of expert testimony.  The role of the trial judge is to determine, pursuant to Rule 104(a), whether the expert is proposing to testify with regard to specialized knowledge that will assist the trier of fact to understand or determine a fact in issue.

Rule 702 allows for witnesses to testify in the form of opinions if the witnesses possess "scientific, technical, *or other specialized knowledge*" that will assist the trier of fact to understand the evidence or to determine a fact in issue.  Fed.R.Evid. 702.  Here, plaintiff has demonstrated that Bowden has personal and specialized knowledge about the policies, practices and procedures that are employed by the railroad, or that govern the railroad, in regard to safety measures that apply to railroad crossings.  The railroad argues that "[j]urors will be able to understand the existence of a trench and the placement of barricades around the trench."  Deft's Mtn re Bowden at 6.  However, I conclude that jurors may not possess the knowledge that would permit them to evaluate the adequacy of the measures employed by the railroad in light of the railroad's policies and practices, or other relevant standards.

The railroad argues that Bowden's testimony should not be allowed because "it is merely an expression of how the trier of fact should decide a case or what result should be reached on an issue to be decided by the jury.   They refer to the standards that are discussed in the Tenth Circuit opinion of Specht v. Jensen, 853 F.2d 805, 807 (10th cir. 1988).

Rule 702 of the Federal Rules of Evidence allows an expert to testify with regard to scientific, technical or other specialized knowledge if "it will assist the trier of fact." Rule 704 allows witnesses to give their opinions on ultimate issues of fact, but "testimony on ultimate questions of law is not favored."  Specht v. Jensen, 853 F.2d at 808.  "The basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant

8

law, however, circumvents the jury's decision-making function by telling it how to decide

the case." Id.  Rules 702 and 704 prohibit experts from offering opinions about legal

issues that will determine the outcome of a case.  As the Circuit Court stated in Specht:

> an expert's testimony is proper under Rule 702 if the expert
> does not attempt to define the legal parameters within which
> the jury must exercise its fact-finding function.  However,
> when the purpose of testimony is to direct the jury's
> understanding of the legal standards upon which their
> verdict must be based, the testimony cannot be allowed.

Id. at 809-10.

In Specht, plaintiffs sued the police to recover damages for the alleged violations

by the police of the plaintiffs' rights to be free from unconstitutional searches and

seizures.  To support their claims, plaintiffs offered the testimony of a lawyer.  The trial

court permitted the lawyer to offer opinions on the legality of the search that had been

conducted, and to offer opinions on whether plaintiffs had consented to the search.

The Tenth Circuit held that this was error.  Quoting one scholar, the Court stated:

> "A witness cannot be allowed to give an opinion on a
> question of law. . . .  In order to justify having courts resolve
> disputes between litigants, it must be posited as an a priori
> assumption that there is one, but only one, legal answer for
> every cognizable dispute.  There being only one applicable
> legal rule for each dispute or issue, it requires only one
> spokesman of the law, who of course is the judge. . . .  To
> allow anyone other than the judge to state the law would
> violate the basic concept.  Reducing the proposition to a
> more practical level, it would be a waste of time if witnesses
> or counsel should duplicate the judge's statement of the law,
> and it would intolerably confound the jury to have it stated
> differently."

Id. at 807, quoting Stoebuck, *Opinions on Ultimate Facts: Status, Trends, and a Note of*

*Caution*, 41 Den.L.Cent.J. 226, 237 (1964).  The Tenth Circuit concluded that the

testimony of the lawyer had "encroached upon the trial court's authority to instruct the

jury on the applicable law." Id.  Additionally, because the core issues in the case

centered upon whether the search was lawful and whether the plaintiffs had consented

to the search, the trial court had erred in permitting the lawyer to testify as to the

ultimate issues of fact, in violation of the provisions of Fed.R.Evid. 704.

The Court specifically noted that its ruling in Specht was driven in large part by

the fact that the particular expert was a lawyer.  "There is a significant difference

between an attorney who states his belief of what law should govern the case and any

other expert witness." Id. at 808.  This principle was made clear by the Court in a

subsequent decision, Zuchel v. City and County of Denver, 997 F.2d 730, 742 (10th Cir.

1993).

In Zuchel, plaintiff had been shot by a Denver police officer.  He brought claims

against the officer and the City, alleging that the officer's conduct violated his

constitutional rights to be free of unreasonable and excessive force, and alleging that

the City had failed to adequately train its police.  The trial court permitted the plaintiff to

call a witness to testify as an expert with regard to the reasonableness of the conduct

of the police officer.  The expert held a doctorate in criminal justice and was an expert

in police training, tactics, and the use of deadly force.  Id.  The expert was not a lawyer.

The City argued that the expert should have been stricken pursuant to the

holding in Specht.  The Tenth Circuit pointed out that the City failed to recognize the

importance of the fact that the expert witness in the Specht case was a lawyer, and that

this was "a factor we held critical."  Id.  The Court noted that "[c]ourts generally allow experts in this area to state an opinion on whether the conduct at issue fell below accepted standards in the field of law enforcement."  It found that the expert in Zuchel "did not give an opinion on whether [the officer's] conduct was unconstitutional. Rather, he stated his belief that the conduct was inappropriate 'based on (his) understanding of generally accepted police custom and practice in Colorado and throughout the United States."  Id.; United States v. Arutunoff, 1 F.3d 1112, 1118 (10th Cir. 1993) (holding that trial court did not error in allowing law teacher to discuss the registration requirements for securities because the expert "did not attempt to apply the law to the facts of the case or otherwise tell the jury how the case should be decided").

Bowden's expert report reflects that he has not offered any opinions on questions of law, and his discussion of safety requirements does not stray impermissibly into territory that normally is reserved to the judge.  Although Bowden does provide examples of regulations that direct the railroad to take certain safety measures at construction sites, the regulations themselves do not dictate the particularities of the safety measures that must be taken.  Bowden, as an expert who has personal knowledge about the practices and procedures of safety measures, will be permitted to offer his opinion about the adequacy of the measures that were taken here.  Of course, the railroad may raise appropriate objections during trial if counsel believes that some testimony of Bowden represents an attempt by plaintiff to "define the legal parameters within which the jury must exercise its fact-finding function." Specht at 809-10.

## 2.  COMPLIANCE OF BARRICADES WITH

## STATUTES OR REGULATIONS

The railroad has filed a motion that addresses testimony that it believes plaintiff will attempt to offer in regard to the lawfulness of the barricades that were placed at the Clay Street crossing.  It asserts that I should order "that Plaintiff may not elicit testimony or present evidence at trial that the roadway barricades violated any provision of State or local law and that the trench was an unsafe condition on Union Pacific's property." Deft's Mtn re Barricades at 4.

I am puzzled by the second part of the railroad's request for relief, its request to have me prevent any witness from stating that the trench was an "unsafe condition."  If the trench was not "unsafe," why did the railroad feel motivated to prevent persons and autos from passing over the area?  And what is a "safe" trench, anyway?  Is the railroad referring to the trench as safe? or the crossing?  The suggestion that I should prevent witnesses from describing the crossing as being in an unsafe condition seems a bit absurd.

The first part of the railroad's request for relief asks me to order plaintiff to elicit no testimony that suggests that the "barricades violated any provision of State or local law."  Plaintiff states that she "does not contend that the roadway barricades. . . did not comply with the Manual of Uniform Traffic Control Devices with respect to directing vehicular traffic."  The railroad states that Bowden "admitted that the roadway barricades . . . were not in violation of the Manual."  Plaintiff states that he admitted that "only so far as directing traffic," but denies that he testified that the trench was properly

12

protected.

The disputes between the parties as to what constitutes a safe or unsafe trench, what plaintiff intends to prove, and as to what was said by Bowden reflect that this matter is not susceptible to a limiting instruction or order.  I will address this dispute if and when it arises as a dispute during trial.

### 3.  CHALLENGES TO STERLING WEST, M.D.

The railroad has filed a motion in which it asks that I exclude plaintiff's expert witness, Sterling West, M.D., from testifying.  The railroad asserts that plaintiff is attempting to prove through Dr. West that the physical and emotional trauma suffered by plaintiff as a result of her accident caused her rheumatoid arthritis ("RA") to worsen. The railroad argues that Dr. West should not be permitted to offer this opinion because his opinion does not meet the reliability standards that are set by the <u>Daubert</u> case for three reasons:

> (1) his clinical observation of Plaintiff in his role as Plaintiff's treating physician is insufficient causation evidence. . . ; (2) Dr. West's differential diagnosis of the Plaintiff, if he performed any such diagnosis, is similarly unavailing; and (3) Dr. West did not perform epidemiological studies, which is the best evidence of causation."

Deft's Mtn re West at 1, *citing* <u>In re Breast Implant Litigation</u>, 11 F.Supp.2d 1217, 1230 (D.Colo. 1998)

I disagree with the railroad's view of the role played by Dr. West in regard to plaintiff, and in regard to the nature of the opinion that Dr. West will offer.  Dr. West has been the treating physician for plaintiff for 10 years (Pltf's Resp re West at 2), and the

opinions that he will offer, although expert in nature, must be considered as those of a treating physician.

Treating physicians ordinarily are not subject to the requirements of Rule 26(a)(2)B), and are relieved of the requirement to provide an expert report. Fed.R.Civ.P. 26(a)(2)(B).  Generally, the testimony of treating physicians is limited to the examination, diagnosis and treatment of a party.  In those circumstances, the physicians' testimony is "based upon their personal knowledge of the treatment of the patient and not information acquired from outside sources for the purpose of giving an opinion in anticipation of trial."  Baker v. Taco Bell Corp., 163 F.R.D. 348, 349 (D.Colo. 1995); Washington v. Arapahoe Co. Dept. of Soc. Services, 197 F.R.D. 439, 442 (D.Colo. 2000).  However, "when the physician's proposed opinion testimony extends beyond the facts made known to him during the course of the care and treatment of the patient and the witness is specially retained to develop specific opinion testimony, he becomes subject to the provisions of Fed.R.Civ.P. 26(a)(2)(B)."  Wreath v. United States, 161 F.R.D. 448, 450 (D.Kan. 1995).

The deposition testimony of Dr. West, and the medical literature that has been provided to me by plaintiff in conjunction with the affidavit of Dr. West (Pltf's Resp. re West, Ex. 1), demonstrate two things to me: (1) that the doctor clearly is qualified to testify as an expert in the area of rheumatoid arthritis, and (2) that the opinions that he will offer in this case are those that he ordinarily would reach and offer in his treatment of a patient with this disease.  The circumstances presented here are unlike those that were presented in the breast implant litigation that was the subject of In re Breast

14

Implant Litigation.  The court in that case was asked to determine the reliability of the opinions that were being offered to support the proposition that silicone breast implants caused the plaintiffs' auto-immune diseases.  Here, the fact that plaintiff has RA is not at issue, nor is the cause of that disease a question that needs to be addressed.  The question at issue is whether Dr. West may offer the opinion that trauma may cause an exacerbation or aggravation of RA.  In the circumstances presented here, I conclude that he may.

The medical literature that has been provided by plaintiff through Dr. West reflects that studies have been conducted on the role that is played by psychological or physical trauma in the aggravation of RA.  These studies were not conducted for the purpose of finding a cause or cure for a disease.  After all, trauma is not something that can be discovered, isolated and then potentially cured.  Instead, the studies were conducted as part of an effort to assist medical practitioners in the treatment of RA.  The studies show that trauma is a factor that treating physicians should evaluate and consider in the treatment of a patient.  One of the studies noted that patients frequently ask their treating physician whether trauma will aggravate their disease, and the study concluded that trauma is "significantly associated" with the onsets of symptoms.  *See* Pltf's Resp. Re West, Ex. 4, "A case-control study examining the role of physical trauma in the onset of rheumatoid arthritis," Rheumatology 2001; 40:262-266.

Dr. West has testified that before her accident, plaintiff suffered a "flare," or aggravation, of her disease perhaps once every two months, while after her disease he observed that she suffered two per month.  Knowing only that the symptoms of

15

plaintiff's disease are flaring more frequently could lead the doctor to conclude that her

disease is worsening, and cause him to create a more aggressive or permanent course

of treatment than would otherwise be appropriate or necessary.  On the other hand,

knowing that plaintiff has suffered a recent trauma could lead the doctor to conclude

that a more conservative, or temporary, course of treatment is appropriate.  For

patients whose trauma is related to psychological or emotional distress, a doctor may

conclude that treatment options should include measures to address those factors in

addition to the ordinary treatments for RA.  *See, e.g.,* id., Ex. 2, "How Psychological

Stress Via Hormones and Nerve Fibers May Exacerbate Rheumatoid Arthritis," Arthritis

& Rheumatism, Vol. 52, No. 1, January 2000, ¶. 16-26.  At any rate, the studies reflect

a need for practitioners to understand the role that trauma plays in RA, and be aware

that

recent trauma is an important factor to consider in determining a course of treatment for

a patient.

In summary, Dr. West is a treating physician, and is not subject to the

requirements of Rule 26(a)(2)(B).  His  testimony is based upon his personal

knowledge of "the treatment of the patient and not information acquired from outside

sources for the purpose of giving an opinion in anticipation of trial."  Baker v. Taco Bell

Corp., 163 F.R.D. at 349.  As a treating physician, he will be permitted at trial to offer

his opinions about rheumatoid arthritis, his treatment of plaintiff for this disease, and

the role that trauma plays in the treatment of plaintiff's disease.

**ORDER**

16

It is therefore ORDERED as follows:

1.  Defendant's Motion in Limine Pursuant to Federal Rules of Evidence 401, 402, 403, 702 and <u>Daubert</u> to Exclude Plaintiff's Expert Witness Donald Bowden [Doc. 84, filed 09/12/2005] is DENIED.

2.  Defendant's Motion in Limine to Exclude Plaintiff's Expert Witness Sterling West, M.D. [Doc. 85, filed 09/12/2005] is DENIED.

3.   Defendant's Motion in Limine to Exclude Testimony or Evidence to Suggest that the Roadway Barricades Violated Any Provision of State or Local Law [Doc. 86, filed 09/12/2005] is DENIED.

Dated at Denver, Colorado, this day of:  September 29, 2005

BY THE COURT:


s/ O. Edward Schlatter
_____
O. Edward Schlatter
United States Magistrate Judge